The jury in this case was told that Mary Kincaid-Chauncey was guilty of a crime if she received anything from Lance Malone or Mike Gillardy, regardless of whether or not the receipt was defined by Nevada law, regardless of whether or not she was required by any law to disclose it, and regardless of whether or not she received the contribution, for instance, to her grandson's scholarship, ski scholarship, regardless of whether or not that was received in exchange for any particular act that she was to perform. And on top of that, the jury was told that, and then the trial judge then removed a substantial portion of her ability to be able to prove the most important issue in the case. And I think the prosecutor would agree with this, that the whole case, since the jury was told there was no quid pro quo, that the whole case came down to what was her intent at the time that she received at least the two admitted payments. And the – and the trial – what the trial judge did was to misunderstand a rule of evidence and to fail to balance the rule of evidence against the right to present a defense. This is not another way of saying that this is just abusive discretion? Is that? It isn't. It should not be an abusive discretion, Senator, when you're talking about – talking about completely removing her ability to put on her defense. It's constitutional. I mean, she didn't put on a defense. She was allowed to produce evidence that was similar. The judge just made a decision as to – as to what would be too burdensome. I mean, isn't that the kind of thing that district judges – Yeah. That's not what he did, though, Judge. He didn't – he didn't make a decision that it was cumulative. He didn't make a decision that it was not relevant. He didn't make a decision that it was too burdensome. If that had been the case, then you're absolutely right. It would be an abusive discretion, Senator. What he did instead was he went carefully through the direct examination of Mike Gillardy and made a determination on what could come in and what couldn't come in based upon whether Michael Gillardy specifically mentioned a name or specifically mentioned an event in his direct examination only. And that's where the misunderstanding of the rule comes in, is that the judge felt that if – unless Michael Gillardy said on direct, I paid $100,000 to the mayor of City – of the City of Las Vegas, unless he said that on direct, then the defense was then prevented from impeaching him with regard to all of the other things that he said on direct, which he was portrayed – Mr. Gillardy was portrayed as the victim of greedy politicians. In fact, that was a word that he used, on direct. He talked to the – the prosecutor led him in on direct examination to his introduction to the world of Las Vegas politics by Michael McDonald, a city councilman, and he – and he paid off all of the politicians that he ever had contact with. And so he introduced the subject himself. The government introduced the subject themselves of the fact that here was poor Mr. Gillardy who was being victimized by the politicians. But then what they did was is they said, well, we're not going to talk about what he told the FBI. We're not going to talk about – except when we want to use it as a prior consistent statement, which the government introduced his statements to the FBI and to his lawyers when he was trying to get a deal from the government, introduced those things to show that he was a truth teller. They needed Mike Gillardy. There's a suggestion in their brief that they really didn't need Mike Gillardy. That may well have been true for Dario Herrera, because there was a lot of stuff on those tapes with regard to Dario Herrera making admissions on the tapes as to why he was taking the payments and what he was going to do and what the exchange of the – of the emoluments was – was for. That is not true of Mary Kincaid-Chauncey. They didn't have that. They needed Mike Gillardy to interpret terms, for instance. They didn't – The judge was pretty careful in going through witness by witness and explaining why he believed that you were not entitled to call those witnesses. He also authorized – he also authorized the defense, said, I will permit you to allow testimony from Tom Riley and from Schofield, Mark Schofield. And you called Riley and you didn't call Schofield. Correct. So even one of the witnesses that the district court allowed you to call, you didn't call. So how can you complain today that the district court didn't allow you to put on your defense when you didn't call one of the witnesses that he allowed you to call? Well, I think the fact that – that trial counsel – and I can't tell you what the tactics of trial counsel were with regard to Mr. Schofield. But I think that the fact that trial counsel chose not to call one witness doesn't mean that the – that his vigorous argument on behalf of the other eight witnesses is waived. Who's most important among those eight witnesses? Well, there are really two sets of witnesses. Lynette Boggs McDonald was a witness. And let me – let me sort of divide them as the government did in their brief. The fact of the matter is, is that – is that there was a suggestion throughout the government's case that – that Lance Malone may have been pocketing money, although the government put Gillardian on to say he's an honest man and I didn't think he was taking any money. They needed to do that because they had the two admitted events that Mary Kincaid-Chauncey admitted to. And then they had the two events where it was just her and Lance Malone together and it – and Gillardian needed to believe that Lance Malone – or the government needed to believe Gillardian that money had passed him. So Lynette Boggs McDonald is quite important because – Is this for the theft theory? This – no, this – yes, this is for the theft theory. And that – and because Gillardian said he gave Lance Malone $10,000 to give to Lynette Boggs McDonald. Lynette Boggs McDonald would have testified that she did not get $10,000, that she got $1,000. Now, the government says, well, that's not really what he even said in cross-examination, but that is what he said. And I can read to you from the excerpt of record, page 313, what he disputed because Gillardian – Gillardian had real difficulties on cross-recalling things that he had no difficulty recalling when he was talking to his lawyers to work out a deal or talking to the FBI to try to make himself valuable. But when he was on cross-examination, he said, actually, I said I didn't know if I had given her a cash or a check. He never said on cross-examination that he didn't recall giving her the $10,000 because the government would like to say, well, but then the fact that we impeached – we impeached him with an inconsistent statement to the FBI that he did give her $10,000 doesn't matter because that's really not substantive evidence, and therefore, you can't use the theory of reasonably within the scope of direct examination. And that's where the problem of the evidence rule comes in, is it was a – there was a really a substantial misunderstanding of that rule. And when you read the – Sotomayor, was it a misunderstanding, or are you essentially claiming a constitutional override? I mean, that is – some of this – are you saying that it did come out in direct examination, or are you saying that the rule does not preclude contradiction of extrinsic evidence for cross-examination, or are you saying that there's a constitutional override? Those are three possibilities. We're saying – Judge, we're saying both. We're saying that – is that to the extent that this Court looks to that – to the evidence rule as the basis for the ruling, the trial court misunderstood the rule and drew a bright line where the bright line shouldn't be drawn. Because there is no bright line between direct and cross-examination. That's correct. Or because of the command prompt on direct. Because there is no bright line. In fact, the whole purpose of that rule is, in fact, in my – What rule are we talking about, 608? We're talking about the impeachment by contradiction. It's actually 607, is what this Court's ruling in Tucker says. It's actually 607, which is just your general anybody can impeach anybody rule. And they make it clear that it's a 607 rule. They cite to Wright and Miller. It does draw this distinction, doesn't it? I'm sorry? Doesn't talk of draw this distinction between direct and cross. They talk about direct and cross because of the facts of that case, but then they cite to Wright and Miller and to Weinstein's, and you can learn what the purpose of the rule is. It's what, in my old evidence class, was called an evidentiary harpoon and what they call smuggling evidence in. In other words, and that's exactly what was the case in Tucker. There was evidence that would not have come in absent the question on cross. And so the rule that's established is, is this reasonably within the scope of direct examination? Well, when you put Mike Ghilardi up on the stand to say I'm an honest man and I'm a victim of the greedy politicians in Las Vegas, and I believe Lance Malone that he wouldn't steal my money. When you put him up on direct examination for that purpose and you put him up to interpret terms in the wiretaps, because remember, these are conversations between Malone and Ghilardi, and he's the one the government was counting on to interpret what go to lunch means, what hook up means, what say hi means. Those were all things they needed Ghilardi to be believed on for Mary Pincaid Chauncey's case. So reasonably within the scope of that direct is our ability then to come in and give an extrinsic evidence that will demonstrate that Mike Ghilardi is a liar, that Mike Ghilardi was puffing everything, including what he was saying about Mary Pincaid. And there's plenty of evidence for that regarding it was used at great length in the closing argument, for example. So it's not as if there wasn't both on the theft theory and in the liar theory an enormous amount of evidence of that kind, which was used, and it was used quite plausibly and persuasively, actually. The government's burden at this point, though, Judge, is to prove to show you beyond a reasonable doubt that it was harmless. And you're saying beyond a reasonable doubt because you're saying it's constitutional question, because the constitutional question, there were six, there were, I'll list the witnesses for you that he went through in his ruling. There was Ardell Jorgensen, who would have moved. Are these all on the theft theory or this is on the liar theory? This is now on the liar theory, Judge, is that Ardell Jorgensen, these are the witnesses finding there were three or four hearings, so it gets a little confusing because the list of witnesses changed as evidence was adduced during the trial. But if you look at the excerpt of Record 353, Ardell Jorgensen, who was the witness who was the head of licensing for Clark County, Ghilardi said on cross that he gave her $20,000 in cash. If she had been called, she would have denied that she got that cash. Yvonne Atkinson Gates, Ghilardi said on cross that she solicited $100,000 in speaking with Slauson. This was just a hearsay statement, that there was just sort of nothing to it. She said $100,000 would make the whole thing go away is what he testified. Correct. And there's nothing else to that other than that statement. Well, he is alleging that a county commissioner was soliciting a bribe of $100,000 and that county commissioner would say that's not true. It was in order to be able to make the problem at Jaguars go away, which was under the jurisdiction of the county commission, he's saying that Yvonne Atkinson Gates solicited $100,000. This was not even a statement that was made to him. He testified that he overheard it, that it was made to Malone, but he overheard the statement. He then tells the FBI that I've got this one, too. I've got more of these things I can tell you about, and this is one of them I can tell you about. The jury was entitled to know that he said those things, that those things were false. All they got to hear was he made the allegation. They didn't get to hear that it was false. We've talked about the ---- Before you're running low on time, you had mentioned a couple of other points in the opening. One of the things you mentioned is that the ---- I wasn't clear which one of these were you were going to pursue, but one of the things you mentioned was that the jury was not required to find that there was any requirement in the State law to have it make an disclosure. It wasn't clear to me that that was something that was preserved in your brief. That's not an instruction issue, no, Judge. That wasn't an objection, because they weren't instructed that they didn't have to file it, find it under Nevada law. What they were given was evidence showing that there was no law that prohibited what Mary Kay Chauncey disclosed or didn't disclose. Right. But the instruction didn't make it under the requirement. Right. And you're not objecting to that. I'm not objecting to that. It was the context of that instruction and the context of the evidence that was adduced that made this so damaging. The Honest Services Fraud instruction basically boils the whole case down to what was in Mary Kincaid Chauncey's mind when she got the contribution to her grandson's ski school or the contribution to her son's city council campaign. What was in her mind? Was it with regard to disclosure or with regard to her intention? They used the failure to disclose as circumstantial evidence of what was in her mind. So the only reason I mentioned disclosure is the other was the other was failure to disclose. Right. And if we thought the failure to disclose instruction wrong because it didn't say that there had to be some requirement, specific requirement to disclose, would that matter because there was another theory which was the more likely theory anyway? Well, the problem, of course, is that now you have two theories in the instruction. We have no way of knowing what the jury bought, whether it was the failure to disclose. They certainly put on evidence of the failure to disclose. In fact, they walked through it and said, well, she didn't disclose that, and she didn't disclose that, and she didn't disclose that. And was there any allegation that there was a State law requirement or a state law? No, exactly the opposite. There was evidence put on saying there was no State law. So the only way to make sure that you have a line that can be drawn on this. It doesn't matter, since you don't object to an instruction and you're not objecting to an instruction on that score. Correct. You're not objecting, you're not saying they should have been instructed that State law or Federal law required disclosure. No, no, no. You're not making that argument. I'm not making that argument. What I'm saying is, is that when you have that circumstance, the whole case boils down to what is in her mind. And when you're prevented from putting on the evidence that it would have helped with. And I would think that that's pretty good for you, for your client. I'm sorry? Since the government has the burden of proof beyond reasonable doubt, I would think that's pretty good for your client to have it all boiled down to what's in her mind. As long as you're able to put on your defense, that's pretty good for the client. I'm confused about that. If you're not objecting to the breadth of a disclosure requirement in the instructions, then it doesn't boil down. Well, it boils down to what's in her mind only in that she had to know that she had an obligation to disclose. Is that why? On the disclosure theory, that is, the intent issue that I just raised is not relevant to the disclosure theory. Okay. Under the under the. Right. But you've told Judge Kosinski that you're not objecting to the fact that the disclosure theory encompasses some Federal common law disclosure, regardless. Not objecting on that ground, no, Your Honor. And as long as you – right now, we have no idea why the jury convicted under that instruction, because there were two completely separate theories included in the instructions. But you're not objecting, so what? Otherwise, if she had to know. We are objecting to that instruction. Yes, we are. And so. On what ground? The objection to the theory with regard to the receipt, okay, is quo pro quo, is that there was no requirement for her that she receive the emoluments with any – with intention to commit any particular act. Okay. And what sense does quo pro quo make when the theory – I mean, you know, there are two theories. Uh-huh. Correct. And quo pro quo makes sense in the first – as the first theory, but on the Fairness Disclosed theory, quo pro quo makes no sense at all. There's nothing to do with it. No, quo pro quo only has to do with the first theory. That's correct. All right. But you're not objecting to the second theory, and if they could have convicted them, you're not objecting to the second theory, is that right? Reversal would be required because there were two theories contained in the instruction, and we don't know how. We don't know which way the jury found it. We don't know which way the jury found it. But you are, in fact, not objecting to the second theory at all. We don't have a preserved objection to that. If the jury is not going to present on the first theory, you'd be out of luck. If there was only one theory in the instruction and it was only failure to disclose because there was no objection made to that portion of the instruction, that's correct. The reason you're not objecting is because there was no objection made. That error was not preserved in this record. You're not making a plain error objection. I will if the Court is willing to entertain it. We don't give a – we don't give a – we don't invite objections. You know, you have to try it. What can we say to it? I'm not particularly inviting it. You had mentioned it in the litany of issues when you – before we got to the evidentiary point. This was one of the things you pointed to. And my recollection was that you really didn't have any objection to that. So I – if you're not raising it, you know, I'm not – that's not an issue that's briefed in these briefs, Your Honor. All right. So let's go to the other one. The honest services wire for instruction said that the official has to accept something of a value with an intent to be influenced. So your argument that there was no quid pro quo requirement is really that it wasn't a requirement of an explicit quid pro quo. The quid pro quo is the tit-for-tat, this for that. That's basically what that means, is that the – it's that there must be – the only way to circumscribe this crime, as the Court knows the – I'm running out of time. As the Court knows, the honest services fraud was thrown into the wire fraud statute just as sort of a line at the end after a Supreme Court decision. And so there hasn't been a lot of development of this issue. But it's the this for that. The only way to circumscribe this crime so that it's contained in any way is to be able to require that at least the government be required to prove that the – that the emolument be received in exchange for doing something in particular. So why isn't accepting something of value with an intent to be influenced? The quid pro quo would be not just influence generally forevermore. It would – the quid pro quo would require that the jury, as it does in the Hobbs Act violation, that they actually find that it – that it was with the intent to influence a particular act. A vote. So what is it that you wanted in this instruction? What should the instruction have said? The instruction should have included the same language that is in the Hobbs Act instruction, that the – that was received with the intent to commit a particular act. But that's only with regard to a campaign contribution. I mean, in the Hobbs Act – I thought that in the Hobbs Act context, the concept of an intent to be influenced was – was possibly adequate under Ninth Circuit. And I gather that there's – The Ninth Circuit really didn't rule on that because they didn't rule on the instruction. And the vast majority of the cases on the Hobbs Act require a quid pro quo for both. Right. It's a quid pro quo, but they – so what in this instruction, in the Hobbs Act instruction, what is the instruction, the language that should have been given with regard to the other? They shouldn't have – the Court should not have modified the model instruction. The language that was – you'll find it in my opening brief on page 14. The language that was added that completely diluted the quid pro quo requirement is found in the bolded language in the third – fourth paragraph down from the top of page 14. So you're arguing that that instruction is wrong, too, that they're both – Yes. Yes. I still don't understand what the problem is. I want to make sure that I understand. So the instruction should have said, Ms. Kincaid Chauncey received – you, the jury, must find that she received money in exchange for a promise to vote on October 31st, whatever it was, 2002, for – You know, or to – in exchange for a promise to lift the building violations or in exchange for a promise to do something in particular, not just a general because it's too dangerous this way. That's the problem is that the crime is too dangerous. What is the understanding is you're going to take the money, and we don't really need anything right this minute, but there's going to be a time when we're going to need to call on you, and at that point, you agree that you will do whatever we ask of you. Why does it have to be a specific quid pro quo on a specific issue? Why is it being on the payroll of the people or not? Well, they didn't prove that. I mean, they proved that with some other politicians, but they certainly didn't prove that with Mary Kincaid Chauncey. They didn't prove being on the payroll. We're not talking jury instruction, not proof. I'm sorry? We're now talking jury instruction, not proof. What they proved is a different question, but why is it a primitive proper instruction to say, look, if you took money without a particular understanding of your particular action, but simply took the money intending to be corrupted by it, that's enough. Why is that? What would be enough is you took the money with the intent that when I call on you to vote my way, you'll vote my way. And that was not in the indiscretion. That's a particular act. When I call on you to vote on the all-new dancing board. You don't know what it is. You know, people in government offices often have lots of influence. They can be of various ways. Casting a vote is one thing. Calling up people in the bureaucracy and leaning on them in another way. Calling the police commission. There are all sorts of things that she might do. I don't know how government works in Las Vegas, but in general, these things are all connected. And let's say if you're talking about the L.A. City Council, if a City Council member were to call the building commission, for example, I bet you they would pay attention. The problem is that there is an inability to distinguish what happened, at least with Mary Kincaid Chauncey, with regular lobbying activities. You took money, and in exchange for it, you were there and ready to, you know, read a favor. It's like calling the Godfather. You know, one day we will call you. But look what the jury was allowed to convict on in this case. They convicted her for receiving a contribution to her grandson's ski school. If they believe that that was for her. If they believe that, it was thousands of dollars that didn't have to come out of her pocket. But she was listing it from a lot of people, and that was the evidence, is it wasn't just from him. He wasn't offering it to her for that. I mean, so because this instruction doesn't have any containment to it, that it be a quid pro quo that you're allowed to convict on something like this. If that counts too low. I'm sorry. It seems to be exactly the one that you agreed would be okay. It's sufficient if the public official understands that he or she is expected, as a result of the payment, to exercise particular kinds of influence as specific opportunities arise. But that's exactly what we objected to. That's what should not be in the HUD section. But it doesn't sound like what you said before would be okay. No, no, no. No, no, I did not. No, this is the paragraph that we objected to. This is what was added to the HUD section. What's wrong with that? Why doesn't that, if it doesn't have to be an explicit promise to perform a particular known act at the time, but rather a promise to do, you know, whatever we call on you to do, we'll be calling you to do it. Isn't that what that says? Well, the Eleventh Circuit found that this exact language is not quid pro quo. Martinez's case, which is cited in our briefs, says this is a dilution of the quid pro quo, that this is too dangerous. This would allow legitimate lobbying activities to become crimes. But then Tucker says that the government need not show an explicit agreement if it need only show that Tucker received the payment knowing that it was made in return for official acts. It's sufficient if he is expected as a result of the payment to exercise particular kinds of influence, i.e., on behalf of the payer, as specific opportunities arise. It doesn't – I mean, aren't we bound by that? No, you're not. And the reason you're not is that for the same reason that if I made a 29A argument based upon the insufficiency of the evidence, which was the only issue in Tucker, I could not stand up in front of you and say that the language in the instruction was wrong. And that's what happened in Tucker. They assumed that there was evidence of quid pro quo in the discussion, and they were merely talking about the kinds of proof that's available to the government. But they defied what quid pro quo was in a way that seems consistent with this instruction. And the model jury instructions have not been changed based upon Tucker to add this diluting language. Counsel, one last question to go back to the witnesses that Judge Hicks excluded. If the principal issue before the jury is – let me back up. Ms. Kincaid-Chauncey admits to accepting money from Lance Malone on two occasions. She denies receiving money on two other occasions in which there is testimony. So we do have two occasions on which she has received thousands of dollars from Lance Malone. If the question before the jury is what is in Mary Kincaid-Chauncey's mind, why is the testimony of Lynette Boggs McDonald or Ms. Jorgensen or Mayor Goodman or anybody else been relevant to what's in her mind? Lynette Boggs McDonald's testimony is directly relevant to be able to show the jury that Lance Malone, those two occasions that she was convicted of taking money that she did not admit, that Lance Malone probably pocketed the money. That was the theory. Well, how does that help your client if there are still two occasions on which she admits receiving money and on which the jury can convince her? Because the jury very easily could have found and could have believed Mary Kincaid-Chauncey when she admitted from day one to the FBI agents that she received these and that she did not believe she was receiving them for the purpose of influence or anything else. But because of the two other incidents, because of the two other incidents which she did not admit. Were the counts broken down by incident? Yes. And so she was convicted by the jury of receiving money on the occasion for her that she received it and admitted to receiving it. Correct. And the jury did find that she had evil intent at that time. Because of the series of events. I don't think that we can sit here. If the jury were to agree with you that these witnesses were excluded, don't we have to affirm on those counts? No, you do not. Because the fact of the matter is, is the jury was not looking at the evidence. If we were – I believe that she would have been acquitted. Well, how does the McFarland-McDonald's testimony about receiving – whether she received $1,000 or $10,000 go to what was in Mary Kincaid-Chauncey's mail? Because I think that the jury would have acquitted if the only two incidents were the ones that she admitted to. I think that they would have. But the jury convicted her on those specific incidents. Because they were told not only that there were those two incidents, but there are these two other incidents in which Malone probably pocketed the money, in our view. Sort of a cumulative error? No, it's the way they tried the case. No, it's exactly how they tried the case. Because it isn't just these two incidents. It is these four incidents. It's these five incidents. But the jury didn't have to find that she had taken money on all four occasions in order to be able to convict her on certain counts. But the jury wasn't looking at the two incidents that she admitted and testified to in a vacuum. They were looking at them with the other two events. Because the jury did acquit her on one count, right? They did. They acquitted her on a Hobsack count, but didn't acquit her on the identical count on a services fraud. So it's difficult to say what happened there. Right. But those counts did relate to these specific instances that she admits receiving money. The four counts do, yes. The Hobsack counts do, yes. Okay. Thank you. I'm sorry. I'm way over time. We'll hear from the government. Good morning. May it please the court. I'm Daniel Sheese. Let me start with the discussion that you had at the end, or just before the end, regarding the elements of the offenses and the jury instructions. There's two separate charges here, and the argument that's being made is improperly blurring the two charges and the elements. There is the Hobsack charge, which has as an element quid pro quo. And what the defendant's arguing is that element was insufficient. The instruction on quid pro quo was insufficient. Then there's the Hobsack on a services fraud, which by statute and definition does not require a quid pro quo. You don't understand the instruction of accepting something of value with an intent to be influenced as a quid pro quo. That has substantial overlap with a quid pro quo. You can take that similar type of instruction in the Hobsack and call it a quid pro quo. But the point of the on a services fraud is that it does not require a quid pro quo instruction. And what the defendant's asking you to do, the panel is asking you to do, is to graph from the Hobsack. Now, what does it require? It requires an intent to defraud or an intent to deceive. And the difference is the policy reasons behind it. The on a services... Intent to deceive or defraud whom? And it's strange because you're trying to think about it usually, but in order to have a defection or fraud, you have to be directed at someone in particular. Who? In this case, the intent to defraud is to intent to defraud the public. And in Ms. Kincaid-Chauncey's condition or situation, additionally, the county commission. She defrauded the public because she owed the public a duty of on a services. When she takes money with the intent to be improperly influenced, she is not voting from an honest position. She is voting from a corrupt position. She's deceiving the public by silently sitting at the front and telling them and voting them through their actions that she is honestly doing so. When the public doesn't know that she's taking money under the table. So the victim in the honest services fraud case is the public. Deprived of their honest services. Now, in the honest services fraud, because it has as that element an intent to defraud or an intent to deceive, what the policy and the purpose is is to stop fraudulent... So the whole thing would be fixed if she went out and told everybody that he paid for her son's preschool and that would be fine? No, because deception is not the only element or the requirement that's there. Whenever a public official deprives the public of the right to honest services, even if the public knows that they're taking the product, they still, through a scheme or artifice, deprive the public. And there's no requirement that there actually be deception in a fraudulent scheme. There is a scheme to defraud. And there is also schemes to deprive of valuable rights through misrepresentation. Fraud, just in common legal usage, include a misrepresentation of some kind? Yes. So what you mean by there doesn't need to be one? Well, in the sense that there does not need to be, and I need to back up a little bit on this, there doesn't need to be an express misrepresentation. It can be simply the appearance of, I'm doing something honest, I'm voting honestly, I'm voting on equal grounds. To the extent I said there is no deception, I didn't mean to be that broadly. In the limited extent of explicit versus implicit. And so going back to the honest services fraud, the required element is that intent to deceive. There is no argument, there is no basis to believe that that element is inadequate. That that element captures conduct that's not criminal. Now what she argues is, well, let me give you a hypothetical. Or not hypothetical, let me take the facts of this case. Her argument is Ms. Kincaid Chauncey accepted money for her grandson's ski school. That in and of itself is not illegal. But if she took it with the intent to be improperly influenced on behalf of Michael Goularty, she has acted with that intent to deceive. And she has then crossed the line into illegal conduct. There's no situation where a public official can take money for something of value in connection from a private party other than a statutory de minimis gift But other than that situation, there's no situation where you can take money or something of value in connection with your public office. What was the last sentence? In connection with your public office. But where's that in the instruction? The in connection of public office. Where was that in the instruction? The instruction as it went through the honest services fraud talked about a public official cannot take something implicit within the concept of public official cannot take something of value with the intent to be improperly influenced. Implicit in that is... Improperly influenced in what? You might be improperly influenced in your dealings with your family. You might be improperly influenced in your dealings with your business partners. I mean, what if she takes money and the money's intended to get her to cheat on her business partners? I mean, she's involved in some sort of business, and this is intended to sell a partnership good without impure quality. Where is that excluded by the instruction? Which instruction are we talking about now? Instruction 26. 26. Hold on a second. I got it. When the appellant's opening brief, it's quoted on page 12. I have the instruction itself. Can you tell me where this excludes the possibility that she takes the money to be improperly influenced in her... Public office? Public position?  At least it's quoted in the appellant's brief. It starts off, public officials inherently owe to the public to act in the public's best interest. Right. Instead, or if instead, the public official accepts something of value with an intent to be influenced, the public has defrauded... Excuse me. The official has defrauded the public of the official's honest services, even though no tangible loss to the public has been shown, because the public official deprived the public of its right to honest and faithful government. Clearly implicit in that, in the context of... The one is implicit. So the point is you're saying it's not there, but it's... We need to read into it, but we say it needs to be influenced, and there where the dash appears, you want to add the words influence in her official actions. I believe a fair reading of that paragraph... I'm asking you a question. That's what you want us to do. It may be perfectly fair, it may be a very good argument, but what you need us to do is to read those words into that instruction with word influence. If we say no, we can't read those words, you lose. I disagree. No, no, no. You win anyway even if we don't read those words into the instruction? Well, you must find... You understand my question? Yes, I do, clearly. So you can win even if we don't read those words into the instruction? No, you must... Okay, so what I'm saying is you need us to read those words in. If we can't do that, if we won't do that, then the instruction is inadequate. In that context, if you can't find that the instruction... A yes or no would be good. Do you understand the question? I understand the question. If we can't buy into adding those words into the instruction, you lose. Yes or no? Yes. Okay, good. Let's talk about why we should read those words into the instruction. The instruction as a whole conveys clearly that the public official must be acting in a public context. And I will focus on why you won. What's so difficult about adding the words in there? I mean, it's saying influence in her official actions. I mean, it's... What's so difficult about stating exactly what you want? I mean, the instruction does everything except state that explicitly. I mean, it could be added. There are only a few words. It's a little lame. The jury's gone. Well, counsel, is this solved in either paragraph three or four of that same instruction? We have the phrase, let's see, in the manner in which the public official makes his or her decision, the next paragraph, if the public official understands that he or she is expected to exercise the official duties in favor of the contributor as a result of a campaign contribution. I don't know where you're reading from. I'm reading from paragraph four and five. I said three and four. It's four and five. Is the paragraph starting, it is not necessary? It is not necessary in the following paragraph. Okay. It's in the middle. It's in the middle of that paragraph. Are you following the question? Go ahead and answer it. If your question was, does that concept make clear that the instruction identified the act having to be an official act? The answer is yes. And I'm sorry, which language are we talking about now? The paragraph that begins, it is not necessary. No, I got the paragraph. I'm talking about the language. It means actual words. Beginning with the sentence that starts, the offense of honest services fraud is not concerned with the wisdom or the results of the public official's decisions, but rather with the manner in which the public official makes his or her decision. Thus, the decision-making process may be corrupted and the public is deprived of honest services, even though the public official comes to the right decision for the wrong reason. I don't see how that can be read in any context other than the public official acting within the scope of his or her office. The first sentence of the following paragraph ends with the word that is made in return for official act. Yes. What about something of value? Something of value, somebody's friendship, for example? I'm sorry. I think the overall problem is that this is very broad, and in addition to the intent to be influenced, to go back to the first paragraph again, the official accepts something of value. Now, in this case, it was asserted to be money, but it was also asserted to be essentially her family's goodwill because she was doing things for her family. Is that something of value? It could be, but what she was accepting from the giver in this case was money, was something of value. That concept of something of value actually – What if it was a charitable – there was some talk of him giving charitable contributions to her favorite charities. Would that be something of value? It could be if it was given with the intent to be improperly influenced. So even if it wasn't given to her, it was given to somebody else, what she got was the good feeling that her favorite charity was getting money. That would be accepting something of value. Yes, because she was – it doesn't matter if she received it or if she directed it to somebody else. The something of value is what came from the giver. The focus doesn't have to be on whether she received satisfaction from it. She has to accept something of value. Excuse me? She has to accept something of value. She can accept in the larger sense of if she directs the money to go to her son or her grandson, and she takes that from the public official, then with that improper intent – And the intent to be influenced, for example, could it include, if he calls me up, I'll listen to him, but I won't necessarily do anything as a result? Is that an intent to be influenced? No, because listening – Well, some people have access and some people don't. I mean, I will take his phone calls. That's the influence. I won't take other people's phone calls. I'm too busy. I'll take his phone calls. There's a body of case law going on the question that you have in the Ninth Circuit, and as I'm standing here, I'm not going to be able to tell you the name of the case. But generally speaking, as the Court has limited honest services fraud in that context, simply buying access to a public official is not a – it doesn't always meet the element of an official act. And how is the jury's question of asking this instruction? Because in this instruction, when it talks about official acts, decisions, when it comes to the right decision for the wrong reason, when you act with the intent to defraud, to the – Well, the wrong reason, that doesn't seem to be to preclude the access there at all. And, in fact, there is some sense of that in the record here, very much so, that she was listening to these people, and they're often not doing what they asked her to do. She would frequently do what they asked her to do. And sometimes she wouldn't. Sometimes she wouldn't. Right. But when she wouldn't, in the specific instance when she wouldn't, she was discussing that in connection with the July 31, 2002 vote before the county commission, and she said to – or Lance Lone, who was speaking with her on the phone, said to her, I don't think Mike wants you to vote standing alone and get your head chopped off. Yeah, but also there was things about who was going to be the public defender and who was going to be the building director or the something like that, the parks director. And in both instances, my recollection is that she was asked to do A and she did B. Yeah. She doesn't – with the intent to be influenced doesn't mean that she has to do the act. So access – but you said access isn't good enough. So if she doesn't intend to do what they ask her to do, if she doesn't in fact do what they ask her to do, then what's the evidence that she intended to be influenced? Well, the evidence that she intended to be influenced comes from the many instances where she did what they wanted them to do. But what I'm asking is this. Does this instruction – how does this instruction negate an access theory? If it negates an access theory, it does not specifically state or carve out access. What it does, read as a whole, identifies a public official's official acts and it talks in concepts of voting, of taking official steps. But you still have an elliptical phrase in the first sentence that talks about being influenced. And why doesn't that include – I mean, if you want to say, well, it includes official acts, why doesn't it include the possibility of being influenced in the sense of picking up the phone and listening? You might be persuaded every time, but you're influenced if you pick up the phone and every time somebody calls. How is that excluded? You could read that into it. You could give that fact scenario and apply the jury instruction to it, but taken as a whole, I submit – Well, you want us to read some stuff into it, but you don't want us to read other stuff into it. Well, I mean, I was persuaded by your other thesis about the fact that it has to do with official acts, but so far I'm not terribly persuaded that it doesn't – that there's anything in here that negates an access theory as being sufficient. Well, there is – You were very quick in regard to answer yesterday's question about the last paragraph, but the last paragraph deals specifically with campaign contributions. And arguably, given that specifically it deals with campaign contributions, it talks about official acts, and then it doesn't say it elsewhere. The negative payment would be that place where it's mentioned is not so limited. Can I ask a question about the evidence question? The – I was not clear on – the judge, the district court judge, seemed to have been very much influenced by what came out across and what came out indirect in terms of what he was going to allow to be contradicted by extrinsic evidence. But at least some of what came out that was relevant to this seems to have come out in stipulations. In other words, there were stipulations about who he would have said – what he said in his 302 statements about who he gave money to. Was that across or direct, or how do we know which it was? It was across. There were many instances where the defense wanted to call witnesses who were either unavailable or to save time, and we knew what Michael Ghilardi's prior inconsistent statements were, so we stipulated with the defense to simply read it in. The – and that's a concept that I think is being overlooked by counsel, and that's this. For those six witnesses, their – what she wants to do is bring in public officials to contradict, in part, the statements that Michael Ghilardi made pretrial. Right. And what the court did. In terms of the defense, which was that this guy was making things up in order to have the government give him a good deal, why does it matter if it was pretrial or at trial? What – because the testimony that the jury heard – well, as to the defense, that they're going to make a good – that he was trying to make a good deal for himself, what he – what she had was substantial evidence of prior inconsistent statements, impeachment evidence, to show that Michael Ghilardi said one thing before trial, and he said another thing during trial. But she's trying to say something else. The judge, whether he was a concisioner or inconcisioner, he makes up stories when it's to his benefit and only backs off them when somebody catches him. And why aren't the 302 statements usable for that purpose? They were. And they were brought in. And the judge, as you will read on – read on excerpt from the record, filed a – Yes, but she has to be able to prove they weren't true. And the way that she wants to prove they weren't true is by putting on the people that he said did X. The bottom line, what she's trying to prove is that he's a liar. And what she had was completely inconsistent statements before trial with what was said at trial. And the record's replete with prior inconsistent statements, which gives her that. But she's not simply trying to prove that he's a liar in general. She's trying to prove that he makes up having given money to people that he didn't, in fact, give the money to. And that is undermined. His statement about that is destroyed by his inconsistent statements, where he says on some occasion, I did it and I didn't. For example, pre-trial, he said that he gave – that he gave no money to former business licensing director Ardell Jorgensen. None. At trial, he says, I was with Lance Malone, and he slipped $20,000 into her purse. Completely inconsistent. And it achieves the very objective that she's trying to achieve. And the judge's decision when he analyzed this step at a time was – but actually it doesn't. Because what she's trying to achieve is not to demonstrate, again, just that he's a liar and makes things up, but that he is a liar who makes things up when it's to his advantage to get a deal from the government. The record in this case was absolutely replete with evidence of that. The district judge said that he has – So you're making it a harm and serve argument. You're not saying that it was right to keep this stuff out. Both. I'm saying it was right to keep it out on both a contradiction, impeachment or contradiction theory, and that the evidence came from cross-examination or the testimony that he wanted to directly impeach. If one looked at it as a constitutional matter, what would be the constitutional reason for differentiating with regard to the ability of the defendant to put on their defense, whether the evidence that they're contradicting came in direct or cross? From a constitutional perspective, I don't know that there is a specific limitation. Although the Supreme Court has stated that a constitutional right to present a case doesn't give a party unfettered right to put on evidence that's in violation of the rules of evidence or that is marginally relevant. And in this particular case, this case does not rise to a constitutional level. This case has – Because they had enough possibility to put on both of these defenses. Well, as the district court judge said when he – at the end of his ruling on 503, he said the defense is in a position to fully develop an arduous theory concerning fabrications and exaggerations by Ghilardi because all of the prior – and the court said the court has excluded no prior inconsistent statements that have been presented by or offered by the defense. And above that it said, and the evidence has been fully developed in the courtroom as to what the prior statements have been. We spent days in this trial with the defense bringing out not every prior inconsistent statement that Michael Ghilardi had, and they were numerous. They were statements that he made in private in an attorney-client relationship to his attorneys. They were statements he later made to the FBI when they interviewed him in Fiance. They were statements when the FBI interviewed him on three or four separate occasions in Las Vegas. It literally, his prior statements, filled binders of three, four, five inches thick. And they brought him in day after day. And so their theory – What ultimately was the district court's reason for not letting this in? At some point he said it was because the statements were not – alleged that these payments were made to people but didn't mention they were made illegally. At other points he seemed to be saying it was because it was cross. At other points he seemed to be saying it was because it was not a trial, it was in a 302 statement. So what is your understanding of the actual reason that he didn't allow this in? I understood then and now that it was a compilation of all three, that he was looking at it as a whole. That at the outset he was taking the position, what did the witness say, what did Michael Gilardi say about the witness, and will the contradiction, the alleged contradiction, actually contradict it? That's one point. But then he was looking at where did it come from? Was it developed on cross or was it developed on direct? So he took all of those, he was looking at the rules as a whole. Counsel, I want to return to a question that I asked Ms. Gorsman. If we agreed with the appellate's position that the public witness should be allowed to testify, so Ms. Georgeson, Lynette Boggs, McDonald, the mayor, and so on, do we have to – does everything have to go back to the trial? No, not at all. First of all, when you look at – let me take that one one step at a time. In closing argument, Ms. Keke Chauncey's lawyer said that Michael Gilardi is – I'm going to paraphrase it. In fact, I'll give you the exact quote. He said, and this is at the supplemental excerpts of Record 520. He said, the evidence corroborates the suspicions of Michael Gilardi because he thinks he is bribing all of these people. It's going into the hands of Lance Malone and then it never gets to the alleged recipient. On that particular issue of whether Gilardi gave the money to Malone and Malone delivered it to Keke Chauncey, the defense elected to go with Malone is a thief theory and abandoned, for that limited issue, Gilardi is a liar theory. And the evidence that came into the recordings that set forth in the government's brief on pages 27 through 25 shows that every payment and that a payment was made was corroborated in tape or by FBI surveillance where they simply saw Ms. Keke Chauncey where she was. None of it relied upon Michael Gilardi exclusively because everything he said was corroborated in tape. And so you don't need those people because the evidence as to the four payments, not just two, was so overwhelming. And when you look at one of the four payments that she claims that she accepted for her son for the legitimate reason of his campaign contribution and you read the transcripts of the recording starting that morning throughout the day it's absolutely clear that they're not talking about a campaign contribution. They're not talking about something for the son. They're talking about something for Mary Keke Chauncey. And the recordings begin in the morning when Malone calls Mary Keke Chauncey up and says, Can I come over? Doesn't explain to her why he wants to come over. But he does say to her, or she asks him then, Will you take care of my other son at the strip club? Yes. He gets to the house. There he calls Michael Ghilardi with Mary Keke Chauncey and hands the phone to her. And Mary Keke Chauncey says to him, Thank you. Absolutely silent on what she's thanking him for. And they have a discussion. Afterwards Malone calls Ghilardi and they talk about, Hey, things are going well with Mary. Malone gets home that evening. What you didn't know is that Malone was lying to Ghilardi all the time. Except when you get to the end of the day, Malone goes home. He calls Ghilardi up and he says, Hey Mike, I think I didn't give Mary everything. I found $300 in my pocket. I'm not talking with regard to whether he was taking money. I'm just saying he was lying to Ghilardi a lot about his interactions with everybody, including what Mary was promising, what Kenny was promising and so on. That's the allegations that the defense made. It seemed quite plain from reading the documents that that was going on. When those documents and the recordings were read as a whole, the defense strenuously argued that Malone was lying to Ghilardi about those matters. Our position was when you read the recordings as a whole, and not merely take out excerpts from here or excerpts from there or look at one recording, you can see that Malone was, probably with the exception of one instance, was being straight with Ghilardi. On one instance only. What was the instance? It had to do with an event that occurred, a recording at about August of 2002 that followed the significant July 31st vote. As I'm standing here, I don't have the exact date, but what it had to do with Aaron Kenny. The conversation was between Malone and Kenny, and she was saying to Malone, let's just tell Ghilardi something. I don't remember the exact matter, but it was something important. Malone said okay. Every other instance, when you look at a whole, the record supports that Malone was being candid with Ghilardi. Thank you. Ms. Horseman, we used up your time. We'll give you a couple of minutes for rebuttal if you'd just state it. Thank you. I'll be very brief. The one correction to the record that I think needs to be made is that some of the statements of Ghilardi to his attorneys and to the FBI, you can tell if you look at day 20 of the transcript, pages 2669 to 2677, which is the stipulation that the Court questioned about, and what happened was is that Mr. Sheese wanted to put in prior consistent statements of Mr. Ghilardi because under the rule that allows for prior consistent statements when there's been a challenge to recent fabrication. So those statements were not just coming in as inconsistency. And the questions from the Court are absolutely right. This was not just a situation where, well, we're impeaching him because he makes inconsistent statements. With regard to each one of the public officials which she sought to call, the jury was left with some mushy trial testimony because he was backing off of stuff by the time it got to trial, some more specific testimony with regard to, yes, I gave her $10,000, but I can't remember whether it was a cash or a check, and then no ability to be able to have Lynette Boggs McDonald, for instance, come in and say, I didn't get that money. Same thing with Ardell Jorgensen. Put it in the purse. But the jury never heard from Ardell Jorgensen. But how does that help if you've got Ghilardi telling the FBI, I didn't give Jorgensen any money, and then coming on the stand and saying, I watched Malone put a crown royal bag into her purse with $20,000 in it. How are you aided by having her come and deny that she received the $20,000 when you've already got the principal witness, Ghilardi, and it seems like a sideshow to have Jorgensen be forced to come in here and deny this when you already have Ghilardi saying A and not A. Well, that proves he's a liar, although I'm very curious that the government would put a perjurer on the stand. But if she would come in and said, yes, I got $20,000 in a crown royal bag, then Ghilardi would have been a liar the first time when he said I didn't bribe her. So no matter what she testifies, Ghilardi's going to be made out to be a liar. And the jury needed to know from these officials that this man would make up payments, whether he was on the witness stand, whether he was in front of the FBI, or whether he was trying to cut a deal with his lawyers. Do you understand a proffer as being a proffer that these people would actually testify? One thing that concerns me is I just find it very unlikely that many of them would have said the First Amendment. No, I'm certain that Mr. Wright, the representative of Mary Kay Chauncey, would not have listed them. In fact, that may be my ---- Your understanding is that it was a representation that they would testify. Yes. Oh, yes. Yes. I don't think there's any contention that it was inaccurate, and it may well be why some witnesses weren't called. They wouldn't. If they did not receive the money, I suppose if they were still ---- I mean, maybe the prosecutor was standing back there with a target letter for all of them. I don't know. Thank you, Your Honor, for your time. Okay. Thank you very much. The case is argued and submitted.
judges: Kozinski, Berzon, Bybee